**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**


**JOSEPH C. JENKINS,**

     **Plaintiff,**

**vs.**                                                                          **CASE NO. 1:06CV16-MMP/AK**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of Social Security**

     **Defendant.**

                                **/**


**REPORT AND RECOMMENDATION**

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act

(Act) for review of a final determination of the Commissioner of Social Security

(Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) filed

under Title XII of the Act.

Upon review of the record, the Court concludes that the findings of fact and

determinations of the Commissioner are *not* supported by substantial evidence; thus,

the decision of the Commissioner should be reversed and remanded.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, as the Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

A.      PROCEDURAL HISTORY

Plaintiff filed an application for DIB on December 15, 2000, alleging a disability

onset date of February 18, 2000, because of a back impairment.  Plaintiff petitioned for

a hearing before an administrative law judge (ALJ), who conducted a hearing on

October 21, 2003, and entered an unfavorable decision on March 9, 2004.  The Appeals

Council denied Plaintiff's request for review, thus making the decision of the ALJ the

final decision of the Commissioner.  This action followed.

B.      FINDINGS OF THE ALJ

The ALJ found that Plaintiff had chronic low back pain, affective disorder

depression and anxiety, status post right herniated nucleus pulposus, status post right

L5-S1 neurosurgical hemilaminotomies with foraminotomy and diskectomy, and failed

back syndrome, which are severe impairments within the meaning of the regulations,

but which do not meet any of the listings of impairments.  (R. 19).  The ALJ also found

that Plaintiff's mental limitations imposed only mild restriction of activities of daily living

and mild difficulties in maintaining concentration, persistence and pace.  (R. 19).  The

ALJ found that Plaintiff did not meet any of the "C" criteria of the mental listings.  (R. 19).

The ALJ credited the opinion of Michael Zelenak with significant weight because it is

well supported by the medical evidence and he is an expert in the application of Social

Security disability programs.  (R. 19).

The ALJ does not find Plaintiff's subjective complaints to be fully credible

because the objective medical findings do not support total disability or an inability to do

all work activity.  (R. 19).  The MRI does not show a recurrent disc protrusion.  (R. 19).

**No. 1:06CV16-MMP/AK**

Further, the treatment notes of Dr. DePaz are not that significant and Plaintiff's reported daily activities are a wide variety of activities not inconsistent with work activities such as cooking, shopping and laundry.  Despite his allegations of pain, he can maintain sufficient concentration to paint, draw, and learn the computer.  (R. 20).  Given Plaintiff's self reports of job searching, it is a reasonable assumption that Plaintiff himself did not believe he was unable to work.  (R. 20).  Dr. DePaz released Plaintiff to light work and did not place any significant restrictions upon him in his progress notes, even encouraging him to be as active as possible.  (R. 20).  The opinion of Dr. Pino that Plaintiff had a poor to no ability in interacting and working with others, a marked limitation in several areas concerning behavior and social interaction at work are inconsistent with his treatment notes.  The ALJ gives considerable weight to the findings and assessment of Dr. Harry Collins, a board certified neurosurgeon who reviewed the file and opined that Plaintiff could perform light work.  (R. 22).  This is consistent with Plaintiff's treating surgeon, Dr. Reid, who found Plaintiff capable of lifting up to 20 pounds.  (R. 22).  Giving Plaintiff the benefit of the doubt, the ALJ found him capable of sitting 6 hours a day, standing or walking 2 hours a day, and lifting up to 10 pounds.  (R. 22).  He further found Plaintiff restricted from working at heights, around dangerous machinery, or climbing, but with no significant mental limitations or restrictions.  (R. 22). He found Plaintiff to have only mild limitations in daily activities, in maintaining social functioning, concentration, persistence or pace.  (R. 22).

**No. 1:06CV16-MMP/AK**

Based on these findings, the ALJ found Plaintiff precluded from his past relevant work, but with the aid of vocational expert testimony that with Plaintiff's age (51), education (three years of college), and past work skills, there were numerous sedentary semi-skilled jobs that an individual such as Plaintiff could transfer his skills to, such as dispatcher, maintenance and information clerk , which exist in significant numbers in the national economy, rendering Plaintiff not disabled.  (R. 23).

## C.    ISSUES PRESENTED

Plaintiff argues that (1) the ALJ erred in rejecting the opinions of his treating physicians, Drs. DePaz and Pino, as well as the examining physician Dr. Godbey, without support from the evidence for rejecting their opinions; (2) that the ALJ erred in rejecting his credibility without articulating explicit and adequate reasons; (3) that the ALJ erred when he failed to consider limitations from Plaintiff's depression in assessing his RFC; and (4) the ALJ posed a hypothetical to the VE that was unsupported by the evidence in that it failed to include the mental limitations in the RFC, and the VE identified semi-skilled jobs that Plaintiff could perform without any evidence that the Plaintiff possesses transferable skills necessary to perform these jobs.

The government responds that the ALJ articulated reasons why his RFC findings were inconsistent with Dr. DePaz and why he did not completely adopt the later opinions of Dr. DePaz.  The ALJ also pointed out internal inconsistencies in the records of Dr. Pino which is sufficient cause for rejecting his opinion in part.  The ALJ also noted several factors supporting his finding that Plaintiff's subjective complaints were not

**No. 1:06CV16-MMP/AK**

entirely credible such as a lack of objective evidence supporting disabling impairments and the fact that Plaintiff had actively been seeking employment.  Finally, the ALJ properly assessed Plaintiff's RFC and did not rely on the Grids exclusively, rather he used the testimony of the vocational expert.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

## D.    STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624

**No. 1:06CV16-MMP/AK**

(11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1.     Is the individual currently engaged in substantial gainful activity?

2.     Does the individual have any severe impairment?

**No. 1:06CV16-MMP/AK**

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

E.      **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff was injured at work on February 18, 2000, while lifting a 55 gallon drum of paint.  He did not initially seek treatment until he fell at home the next day and went to Urgent Care complaining about his foot and ankle.  X-rays were taken of the foot, ankle and back, which showed no definite fracture.  (R. 314-317).  A few days later (February

**No. 1:06CV16-MMP/AK**

23, 2000) he was better and was released to limited duty with no prolonged standing and no lifting, bending or twisting.  (R. 312).  However, by March 1, 2000, his lower back pain was worse and an MRI was scheduled (R. 310), which showed a disc protrusion and suspected nerve root compression.  (R. 308).  Plaintiff told the physician on follow up that the light duty restrictions were not being followed at work, so he was placed on a no work status as "a precautionary move," and he was scheduled for surgical evaluation as soon as possible.  (R. 306).  On March 31, 2000, his physician believed he could do sedentary work, but it was not an option at his place of employment.  (R. 302).  As of April 18, 2000, Plaintiff had still not had surgery because he turned down the referral and his insurance carrier had not selected another surgeon.  (R. 300).  He was also still on "light duty," which was not offered by his employer.  (R. 300).  By June 5, 2000, he was told that there was little to be done until he went to an orthopedist, which was being delayed by his attorney and which he was told to "become aggressive" about so that he could obtain some relief.  (R. 294).

Finally, Plaintiff was admitted to North Florida Regional Hospital on June 29, 2000, for "right L5-S1 microsurgical discectomy and foraminotomy."  (R. 318-325).  A MRI taken in August 2000 showed some epidural fibrotic tissue around the right side if the thecal sac and the right S1 nerve root, but no recurrent disk protrusion, "although there is moderate persistent right sided foraminal narrowing and potential for right L5 exit nerve root impingement at the forminal level as described above."  (R. 326).

**No. 1:06CV16-MMP/AK**

On December 6, 2000, Dr. Reid released Plaintiff to work with restrictions of lifting no greater than 20 pounds, no pushing, pulling or straining, and no sitting or standing in one position longer than 30 minutes without a position change.  (R. 352).

Dr. Oscar DePaz' treatment notes begin on January 22, 2001, when he saw Plaintiff for continued back pain following his surgery.  (R. 379-382).  He agreed with Dr. Reid's work assessment (light).  (R. 382).  He ordered nerve conduction studies, which revealed mild abnormality with evidence of chronic dysfunction of the right L5 root.  (R. 374-375).  Plaintiff was started on narcotics (r. 372), which helped.  (R. 370).  By June 2001, he was on a job search.  (R. 369).  By February 2002, the pain medication was not working as well and Atarax was added, (R. 442), which was helpful.  (R. 441).  On November 14, 2002, he reported "intermittent depression," and that the Trazedone was not helping, so it was discontinued as an anti-depressant.  (R. 432).

Interrogatories to Dr. DePaz describe Plaintiff's pain as severe, with no improvement and significant restrictions which may prevent gainful employment.  (R. 453).  He was of the opinion that Plaintiff could do only sedentary work.  (R. 454).  He deferred to Dr. Pino for any psychological issues.  (R. 457).

Dr. Ramon Pino interviewed Plaintiff on April 22, 2002, and found him to have moderate functional limitations (R. 415), but no psychiatric limitations which prohibited him from working.  (R. 416).  He recommended anti-depressants.  (R. 417).  Additional treatment notes indicate he saw Plaintiff in December 2002, March 2003, April and

**No. 1:06CV16-MMP/AK**

September 2003.  (R. 466-470).  Although Dr. Pino added a more effective anti-depressant, Plaintiff reported more depression.  (R. 466).

In his response to interrogatories, Dr. Pino reported that Plaintiff had "marked" restrictions of daily activities, social functioning, deficiencies of concentration, persistence and pace, with marked episodes of decompensation.  (R. 472-473).  Plaintiff's prognosis was "extremely poor."  (R. 472).

Plaintiff completed a course of physical therapy with plans to continue a home exercise program.  (R. 331-351).

Based on the medical records of the treating physicians, Plaintiff was given a RFC (dated March 2001) of light duty restrictions.  (R. 353-360).  Another one in August 2001, was the same based on motor and neurological examinations, which were within normal limitations.  (R. 403-410).

Mental capacity evaluations and psychiatric review forms show mild limitations, with the exception of moderate limitations in the areas of concentration, persistence and pace, the ability to complete a normal work day and work week, and in setting goals. (R. 384-402).

An Independent Psychiatric Evaluation by Dr. Asa Godbey was performed on June 8, 2001, in conjunction with Plaintiff's workers compensation case.  (R. 364-366).  Dr. Godbey noted depression prior to and subsequent to his failed back surgery, with "no systematic or sustained treatment for depression."  (R. 365).  Testing indicated moderate depression.  (R. 365).  He recommended therapy and a regimen of

**No. 1:06CV16-MMP/AK**

appropriate medications with a vocational training program that might render him employable within his physical limitations.  (R. 366).

## F.      SUMMARY OF THE ADMINISTRATIVE HEARING (held October 21, 2003)

Plaintiff appeared before the ALJ with his attorney on March 6, 2003, but the hearing was continued because counsel brought additional medical evidence to the hearing which the ALJ had not had previously.  (R. 482-488).

Plaintiff testified that he is 51 years old, high school education with three years of college.  (R. 494).  Plaintiff had not worked since March 2000 and received $240 a week in workers compensation benefits.  (R. 495).  He had applied for several jobs, such as telemarketer, sales person, and telephone operator, but he did not believe he could do the jobs because he was unable to sit for the time required.  (R. 496). He relates that he had surgery in June 2000, which resulted in scar tissue on his nerve root.  (R. 508).  He also had physical therapy and medication, but nothing helped.  (R. 509-510).  Presently he is on pain medication and exercise twice a week.  (R. 511).  Plaintiff's self-described limitations are standing 45 minutes, sitting half an hour, walking 15 minutes to half an hour, lifting 25 to 30 pounds, climbing a short flight of stairs, and bending over a limited amount.  (R. 517).  His daily activities are described as light shopping, cooking mostly soups or meals in the crock pot, some laundry, reading, drawing, painting, and he spends about five to five and a half hours sitting out of an eight hour day, maybe two and half hours standing and walking out of an eight hour day.  (R. 517-519).  He has

**No. 1:06CV16-MMP/AK**

gotten some relief for his depression from Lexapro, but mostly he stays to himself because he is anxious and irritable.  (R. 522-523).

The vocational expert was posed two hypotheticals: one, that he can sit and stand up to six hours each, lift 20 pounds occasionally, lift 10 pounds frequently, with no climbing, working at heights or around dangerous machinery (R. 531-532); and two, that he can sit up to six hours, stand for two hours, with the other restrictions the same as the first hypothetical.  (R. 534).

In response to the first hypothetical, the expert stated that Plaintiff could perform two of his previous jobs as film editor and production assistant and also a number of other jobs in the national economy such as gate guard, silver wrapper, film rental clerk, and case aide.  (R. 533-534).

In response to the second hypothetical, the expert stated that the additional limitations brought his exertional level to between sedentary and light, which eliminated all past relevant work, but there were other jobs such as order clerk, food and beverage, dispatcher of maintenance work, information clerk, and surveillance monitor.  (R. 535-536).  The ALJ then added to the second hypothetical a sit/stand option and the expert reaffirmed that he could not perform any of his past work, but that the gate guard, silver wrapper, dispatcher, order clerk, and surveillance monitor positions would allow for a sit/stand option.  (R. 537).  When the ALJ added the mental limitations described by Dr. Pino, (marked restrictions), the expert responded that no jobs would be available to Plaintiff.  (R. 538).  Plaintiff's attorney inquired of the expert what jobs would be

**No. 1:06CV16-MMP/AK**

available if Plaintiff were limited to ten pounds, and he responded that none of the

previous jobs would be affected since no heavier lifting was involved.  (R. 538).  When

asked if any of the jobs could be performed if Plaintiff required thirty minutes a day to lie

down, the expert responded that if he used his lunch break for this purpose none of the

jobs would be impacted.  (R. 539).  However, if Plaintiff required an hour a day, then all

the jobs would be impacted.  (R. 540).  The attorney also asked what if Plaintiff was

markedly limited because of his depression, and the expert responded that none of the

jobs could be performed.  (R. 542).

**G.     DISCUSSION**

a) Treating physicians' opinions

If a treating physician's opinion on the nature and severity of a claimant's

impairments is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in the record, the

ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).  Nevertheless, the ALJ

may discount the treating physician's opinion if good cause exists to do so. Hillsman v.

Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986).  Good cause may be found when the

opinion is "not bolstered by the evidence," the evidence "supports a contrary finding,"

the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight,"

the opinion is "inconsistent with [the treating physician's] own medical records," the

statement "contains no [supporting] clinical data or information," the opinion "is

unsubstantiated by any clinical or laboratory findings," or the opinion "is not

**No. 1:06CV16-MMP/AK**

accompanied by objective medical evidence." Lewis v. Callahan, 125 F.3d 1436, 1440

(11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing

Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  If an ALJ rejects a treating

physician's opinion, he must give explicit, adequate reasons for so doing, and failure to

do so results in the opinion being deemed accepted as true as a matter of law.

MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury v. Sullivan, 957

F.2d 837, 841 (11th Cir. 1992).

Plaintiff complains that the ALJ rejected the opinions of Drs. DePaz, Pino, as well

as the examining physician Dr. Godbey, without support from the evidence for rejecting

their opinions.  At pages 20-21, the ALJ articulated his reasons for not fully accepting

the marked restrictions and limitations described by Dr. DePaz and Dr. Pino, and the

record supports these findings.  Neither doctor's treating records described what they

would later frame as marked and extreme.  For instance, Dr. DePaz indicated in his

treatment notes that Plaintiff should work at light duty levels, yet stated in the

interrogatories posed to him that Plaintiff's pain was "severe" and precluded any gainful

employment.  Dr. Pino was treating Plaintiff for moderate depression, noted some

improvement with medication, and stated that there were no psychiatric restrictions on

his working.  (R. 416).  Yet, he indicated in his deposition and in the interrogatories that

Plaintiff had marked restrictions.  These are inconsistencies properly noted by the ALJ

which form the bases for his not fully crediting these doctors' opinions.

**No. 1:06CV16-MMP/AK**

Dr. Godbey examined Plaintiff one time and this does not qualify him as a treating physician.  A treating physician is defined as a "medical source who provides [the claimant] or has provided [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."  20 CFR §404.1502.  Thus, the ALJ is not required to give any special weight to the opinion of Dr. Godbey. In social security disability benefits cases, generally, the opinions of examining physicians are given more weight than non-examining physicians, the opinions of treating physicians are given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) are given more weight than non-specialists.  See 20 CFR § 404.1527(d)(1)-(2), (5).  The opinion of a non-examining physician *alone* does not constitute substantial evidence to support the ALJ's decision.  Swindle v. Sullivan, 914 F.2d 222 (11th Cir. 1990).  Thus, when the ALJ rejects the opinions of an examining medical source in favor of a non-examining physician, he should obtain additional information.  Johnson v. Barnhart, 138 Fed. Appx. 266 (11th Cir. 2005).  Here, the ALJ did not credit the opinion of Dr. Godbey over any other physician, he relied upon the opinions of the treating physicians, as expressed in their treatment notes, not their opinions expressed elsewhere, and adequately explained why he was rejecting the opinions.  This is all he was required to do under the law and regulations.

**No. 1:06CV16-MMP/AK**

b) Credibility determination

The ALJ has "wide latitude" in evaluating the weight of evidence, particularly the credibility of witnesses.  Owens v. Heckler, 748 F.2d 1511, 1514 (11th Cir. 1984).  An ALJ may properly find subjective complaints not credible so long as he articulates reasons that are supported by the record.  Jones v. Department of HHS, 941 F.2d 1529 (11th Cir. 1991).  If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit and adequate reasons, and these reasons must be based on substantial evidence.  Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  The failure to articulate adequate reasons for discrediting pain testimony mandates that the testimony be accepted as true as a matter of law.  Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).  In the present case, the ALJ found Plaintiff's allegations of pain and limitation generally credible, but he rejected his allegations of total disability because the MRI did not show a recurrent disk protrusion or acute physical or neurological changes, and Dr. DePaz and Dr. Reid released Plaintiff to light duty work. (R. 19-20).  The ALJ also referred to Plaintiff's self-reported daily activities, which were not inconsistent with basic work activities indicating an ability to maintain sufficient concentration to read, draw, paint and learn the computer.  (R. 20).  The ALJ also referenced Plaintiff's job search as evidence that he believed he could work.  (R. 20). While Plaintiff may disagree with these findings, this Court is limited to reviewing the record to find substantial support for the findings, and the Court finds that it does.

**No. 1:06CV16-MMP/AK**

c) <u>Limitations from Plaintiff's depression in assessing his RFC</u>

An individual's ability to work must be assessed in light of all his impairments and any related symptoms, including pain, which is referred to as his residual functional capacity (RFC).  20 CFR §404.1545.  A person's residual functional capacity is based on the *most* they can do despite their limitations.  *Id.*  In making this determination all of a person's impairments are considered, even those which are not considered severe, and the entire record is to be considered, even non-medical information.  *Id.*  The claimant is responsible for providing this evidence.  *Id.*  This assessment is first used at Step Four of the evaluation process.  If the ALJ determines that a claimant cannot do his past relevant work, then the same RFC will be used at Step Five in conjunction with the Guidelines to decide if the person can make an adjustment to other work in the national economy.

When there is no allegation of a physical or mental limitation, and no information in the record that there is such a limitation, it is assumed that there is no restriction with respect to that functional capacity.  SSR 96-8p (Assessing Residual Functional Capacity in Initial Claims).  Medical opinions from treating sources are entitled to "special significance" and may be entitled to controlling weight if they are well-supported by clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence.  If the ALJ's assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p.

**No. 1:06CV16-MMP/AK**

In the present case, the ALJ found that Plaintiff has mild limitations resulting from his depression with "no significant mental limitations or restrictions."  (R. 22).  Plaintiff contends that the ALJ gave significant weight to the assessment of Dr. Zelenak, who prepared a Psychiatric Review Form, but who found Plaintiff to be moderately limited in maintaining concentration, persistence and pace, and moderately limited in his ability to complete a normal work day and to set realistic goals.  (R. 19, 394, 399).  Thus, Plaintiff contends, the ALJ adopted mild restrictions without explaining why he rejected the moderate limitations found by Dr. Zelenak.  This argument is, in the opinion of the undersigned, further bolstered by the fact that none of Plaintiff's treating physicians found all of his mental restrictions to be mild.  Dr. Pino found Plaintiff to have a moderate functional impairment (R. 415) with some marked restrictions.  (R. 212).  Dr. Godbey also found Plaintiff to have marked limitations.  (R. 111, 121).  Dr. DePaz deferred to Dr. Pino for a mental assessment.  (R.457).  Thus, there is no support in the record for the ALJ's finding that *all* of Plaintiff's mental limitations were mild. Whether or not this would result in a finding of disability is not clear nor is it for the undersigned to determine.

    d) Hypothetical to the VE

When the ALJ uses a vocational expert, he elicits responses from the expert by posing hypothetical questions to him or her.   Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004).   In order for the expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical

**No. 1:06CV16-MMP/AK**

which includes all of Claimant's impairments.  Jones v. Apfel, 190 F.3d 1224, 1229 (11th

Cir. 1999).  The ALJ is only required to pose those limitations he finds severe in the

hypothetical to the expert.  Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).

The ALJ specifically found Plaintiff's affective disorder, depression and anxiety to be

severe (R. 19), but when he formulated his hypotheticals to the vocational expert he

posed only *marked* restrictions, which the expert stated would preclude all jobs.  While

the evidence includes opinions that Plaintiff has marked restrictions, the ALJ rejected

these opinions and based his findings on the limitations noted by Dr. Zelenko.  Yet, he

did not pose these limitations to the vocational expert in his hypotheticals to him.

Again, whether or not inclusion of these less severe limitations would preclude

some or all of the jobs which the expert testified that Plaintiff could perform is uncertain,

but in order for the Commissioner to carry his burden at this step in the evaluation

process, the undersigned is of the opinion that the moderate limitations set forth in the

forms prepared by Dr. Zelenko (which the ALJ appeared to adopt fully) should be

included in the hypotheticals posed to the expert.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **REVERSED**, and this

cause **REMANDED** for further developments by the ALJ, including but not limited to,

reconsideration and reformulation of Plaintiff's RFC and additional testimony by a

vocational expert in response to hypotheticals which include the moderate mental

limitations found by Dr. Zelenko.

**No. 1:06CV16-MMP/AK**

At Gainesville, Florida, this __1st__ day of June, 2007.


**s/ A. KORNBLUM**
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**1:06-CV-16-MMP/AK**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**


**No. 1:06CV16-MMP/AK**